UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Richard Harps, et al., | ) | CASE NO. 1:08 CV 2141 |
| | ) | |
| Plaintiffs, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| TRW Automotive U.S. LLC, | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendant. | ) | |

**Introduction**

This matter is before the Court upon defendant's Motion to Dismiss Plaintiffs' Complaint for Failure to State a Claim (Doc. 6).  The Complaint seeks reinstatement of retiree health insurance coverage.  For the following reasons, the motion is GRANTED.

**Facts**

Plaintiffs, as class representatives, Richard Harps, Gene DeFlorville, Melvin Harsey, Alexandra Kollias, Lenore Lado, Judith O'Neil, Thomas O'Neil, Farrell Thomas and Joseph Wieczorek, bring this action on behalf of themselves and others similarly situated.  Plaintiffs state that they seek reinstatement of their retiree health insurance coverage to the level that

1

was collectively bargained.

The Complaint[1] alleges the following. TRW operated a plant in Cleveland, Ohio where it manufactured engine valves. The production and maintenance employees at the plant were represented by Local 2400 of the United Automobile, Aerospace and Agricultural Implement Workers of America (UAW). Plaintiffs are UAW retirees, or dependents of retirees, who were employed at the plant seeking to represent a class of similarly situated retirees, spouses, surviving spouses and dependents.

In 1997, TRW and the UAW signed a collective bargaining agreement (CBA) that governed the terms and conditions of employment and which stated in part:

**Retiree Medical Benefits**

TRW agrees to provide the following medical benefits to Cleveland Valve Plant and Clarkwood retirees and disabled employees who retired or became disabled on or after April 1, 1992 and those employees who retire during the term of this contract. The qualified dependents, widows and widowers of these groups are also eligible.

1. The TRW Cleveland Area Plan and the TRW Medicare Supplement Plan at the current level of medical benefits or their equivalent will be maintained, or:

2. Health Maintenance Organizations (HMO's) will continue to be offered.

TRW will contribute 75% of the monthly premium rate for the program in which the retirees participate. TRW reserves the right to make reasonable modifications to the benefits provided in the summary plan description. This clause shall not be construed to convey any

---

[1] The Complaint attaches exhibits which have also been considered including the Collective Bargaining Agreement (Ex. A), the Plant Shutdown Agreement (Ex. B), TRW's letters of notification to retirees of modifications to health care options (Exs. D, E), UAW's letter of objection to the proposed changes (Ex. F) and TRW's letter of response (Ex. G).

2

rights to those beyond the term of this agreement.

The CBA also stated,

**33.1 Term**. This Agreement shall remain in full force and effect until midnight, March 31, 2002, and thereafter until either party gives sixty (60) days written notice by registered mail to the other party of the termination of this Agreement whereupon the same shall be terminated after said sixty (60) days, provided, however, that on or after April 1, 2002, either party may terminate any provision thereof upon such notice without terminating the remainder of this Agreement.

In October 2001, TRW announced that it planned to close the valve plant. Following the announcement, TRW and the UAW negotiated a Plant Shutdown Agreement. The Shutdown Agreement was executed in February 2002, and contained the following language relied upon by parties.

Paragraph 4 provides in part:

4. The following additional compensation and benefits will be provided to affected employees, where applicable.

\*\*\*

**i. Pension Plan**. Pursuant to the terms of the TRW UAW Local 2400 Pension Plan, affected employees will continue to be credited with up to 12 months of service following their date of layoff for purposes of determining eligibility for and amount of the benefit under the Plan. Service will stop accruing under that Plan if during the 12-month period the affected employee dies or retires.

For purposes of eligibility for a normal or early retirement under the pension plan, an affected employee's severance from service date shall be deemed to be 12 months after the date of their layoff, or earlier if they die or retire prior to that date.

Employees who retire during the 12-month period, or prior to that period, will receive the retiree health care benefits provided for in the collective bargaining agreement.

Paragraph 15 states:

Except as modified by this Plant Shutdown Agreement, the Collective Bargaining Agreement between the parties dated April 1, 1997, is extended and shall remain in

3

effect until June 30, 2002.

If any provision of the Collective Bargaining Agreement is inconsistent with any provision for [sic] the Plant Shutdown Agreement, the provisions of the Plant Shutdown Agreement shall govern.

Paragraph 21 states:

Nothing in this Agreement shall be construed as waiving any Pension or Retirement benefits (including retiree medical) the affected employee may have under the terms of the Collective Bargaining Agreement.

Paragraph 10 provides that affected employees would sign a Receipt and Release prior to receiving any payments and/or benefits under the Shutdown Agreement, and that signing the release would "extinguish all rights the employee may have under the Collective Bargaining Agreement dated April 1, 1997."

The valve plant closed in July 2002.  The plaintiffs or their spouses all retired before or at the time of the closure.

In October 2005, TRW announced modifications to its retiree health care options for 2006. TRW advised Medicare-eligible retirees that two prior plan options ("MSP IV" and "Kaiser Medicare Plus-OH") would no longer be available. Both plans were Medicare Supplement Plans (MSPs). All Medicare-eligible retirees who had elected coverage under these plans were automatically enrolled in a third option, "MSP III."  Under this option, prescription drug coverage was not provided. TRW stated that the change was being made as Medicare was expanding coverage to include coverage for prescription drugs beginning in January 2006.  TRW also changed the health coverage contribution structure for all retirees, including those who were not eligible for Medicare coverage. For Medicare eligible employees, TRW paid 100% of the monthly MSP III premium rather than the 75% portion

4

required by the CBA.  TRW notified retirees who were not eligible for Medicare that their premium contribution would remain the same for 2006 as it was in 2005. As for both groups, however, TRW capped its contribution at the 2006 level, and retirees were responsible for future health care cost increases beginning in January 2007.

By letter of November 1, 2005, the UAW advised TRW that it "vigorously" objected to the proposed changes and "demand[ed] that TRW retain the current benefits and premiums."  The letter also stated that under the "last collective bargaining agreement, ERISA and the close out agreement between TRW and the UAW, our retiree health insurance benefits are lifetime, vested benefits, which cannot unilaterally be altered at any time."   TRW responded to the UAW by letter of November 11, 2005, stating its intention to go forward with the changes.

Plaintiffs thereafter filed this lawsuit setting forth two claims.  Count One alleges a violation of the Plant Shutdown Agreement under § 301 of the Labor Management Relations Act (LMRA).  Count Two alleges denial of vested retiree health care benefits under the Employee Retirement Income Security Act (ERISA).

This matter is now before the Court upon defendant's Motion to Dismiss.

**Standard of Review**

"For purposes of considering a motion to dismiss, the Court's review is limited to those facts and documents included in the complaint, and the Court accepts the factual allegations in the complaint as true." *DSW, Inc. v. Zappos.com, Inc*., 2008 WL 4762767 (S.D.Ohio October 24, 2008 (citations omitted).

When reviewing a Rule 12(b)(6) Motion to Dismiss for failure to state a claim, the

Court determines "whether plaintiff undoubtedly can prove no set of facts in support of those allegations that would entitle him to relief." *Miller v. Link*, 2008 WL 4179445 (S.D.Ohio 2008) (citing *Edison v. State of Tenn. Dept. Of Children's Serv*., 510 F.3d 631, 634 (6th Cir.2007). "[T]o survive a motion to dismiss, the complaint must contain either direct or inferential allegations respecting all material elements to sustain recovery under some viable legal theory.... Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Id.* (citing *Bell Atlantic v. Twombly*, 127 S.Ct. 1955, 1965 (2007)).

### Discussion

Plaintiffs' Complaint alleges two claims: breach of the Plant Shutdown Agreement under § 301 of the LMRA and denial of vested health care benefits under ERISA.  Plaintiffs do not dispute defendants' assertion that the ERISA claim is derivative of the § 301 claim. This Court agrees.  *See Armistead v. Vernitron Corp.,* 944 F.2d 1287 (6th Cir. 1991) (A breach of contract under LMRA § 301 is also a violation of ERISA.)  Therefore, if the § 301 claim fails, the ERISA claim fails as well.

The issue before this Court is whether the subject retiree health care benefits are vested and, thus, cannot be unilaterally altered by defendant. The starting point to the discussion is well-recognized:

> Retiree health benefit plans, unlike pension plans, are not subject to mandatory vesting. *Noe v. PolyOne Corp*., 520 F.3d 548, 552 (6th Cir.2008)(citing *Maurer v. Joy Tech., Inc*., 212 F .3d 907, 914 (6th Cir.2000)). However, the Sixth Circuit in *UAW v. Yard-Man, Inc.* [,716 F.2d 1476 (6th Cir. 1983),] recognized that parties to collective bargaining agreements can agree to vest retiree health insurance benefits, thereby creating benefits that survive termination of the agreement. Vesting means that the benefits cannot be altered for the lifetime of the beneficiary.[In some cases, the beneficiary is also the surviving spouse of the retiree.] *Sprague v. General Motors*

> *Corp*., 133 F.3d 388, 400 (6th Cir.1998)... If retiree health insurance benefits are not vested, however, then the employer may terminate or modify those benefits upon expiration of the collective bargaining agreement that provided those benefits. *Yolton v. El Paso Tennessee Pipeline Co*., 435 F.3d 571, 578 (6th Cir.2006).

*Moore v. Rohn & Haas*, 2008 WL 4449407 (N.D.Ohio Sept. 30, 1998).

Whether retiree health insurance benefits are vested depends upon the intent of the parties. *Id.* (citing *Yard-Man*). Where there is no ambiguity in the collective bargaining agreement, the parties' intent should be determined from the plain language of the contract. If there is an ambiguity regarding intent to vest, then the Court may look to extrinsic evidence. The Court can find that retiree health insurance benefits are vested even if the parties have not specifically articulated in the collective bargaining agreement an intent to vest and, on the other hand, specific anti-vesting language is not required in order for the Court to find that the parties did not intend retiree health benefits to vest. *Id.* (citations omitted).

Defendant contends that the CBA unambiguously disclaimed any right to lifetime retiree health care beyond the CBA's expiration, and the Plant Shutdown Agreement avoided the creation of any rights regarding retiree health care other than those set forth in the CBA. Defendant asserts that the CBA limited the retiree medical benefits to the term of the CBA as evidenced by the concluding sentence in the Retiree Medical Benefits clause, set forth above: "This clause shall not be construed to convey any rights to those beyond the term of this agreement."  Additionally, defendant points to its right, set forth above in the Term clause, to cancel any provision in the CBA after expiration of the agreement.

Plaintiffs argue that under the *Yard-Man* analysis the Plant Shutdown Agreement unambiguously provides plaintiffs with lifetime retiree health insurance benefits at the levels contained in the 1997 CBA.  Or, the language is ambiguous which would permit discovery as

7

to extrinsic evidence.

For the following reasons, the Court agrees that the Complaint fails to state a claim.

*Yard-Man* requires the Court to ascertain the intent of the parties by application of basic rules of contract interpretation.  Plaintiffs do not assert that the statement in the Retiree Medical Benefits clause in the CBA providing, "This clause shall not be construed to convey any rights to those beyond the term of this agreement" is ambiguous.  Plaintiffs, therefore, agree that the language limited retiree healthcare benefits to the term of the 1997 CBA and, accordingly, the benefits were not vested. And, the CBA provided, under the "term" clause, that "either party may terminate any provision" after the CBA's expiration.  Based on this language, defendant had no obligation to provide retiree benefits after the CBA expired.

Defendant analogizes its case to *UAW v. Cleveland Gear*, 1983 WL 2174 (N.D. Ohio, Oct. 20, 1983) aff'd, 746 F.2d 1477 (table) (6th Cir. 1984) and *Bittinger v. Tecumseh Products Co.*, 83 F. Supp. 2d 851 (E.D. Mich. 1998), aff'd, 201 F.3d 440 (6th Cir. 1999).  Plaintiffs do not distinguish these cases. The Court agrees that these cases support defendant's position and, in fact, the language in the case herein is even more compelling than in those two cases.

In *Cleveland Gear*, the court found that a clause in the Master Contract demonstrated an intent to limit retiree insurance coverage to the contract term: "The Insurance Agreement and Insurance Plan, as revised, shall be effective as provided therein and shall remain in full force and effect during the term of this collective bargaining agreement."

In *Bittinger,* a term limitation provision stated, "The Company has established an Insurance Plan for employees covered by this Agreement and this Plan shall remain in effect for the duration of the Labor Agreement without costs to said employees."  Again, the

8

court found that the language was unambiguous so as to express an intent that the obligation to provide retirement benefits was expressly linked to the duration of the labor agreement.

Instead of addressing the CBA, plaintiffs rely solely on the Plant Shutdown Agreement. Plaintiffs contend that it guarantees vested retiree health benefits and "supplants" the CBA   This Court disagrees.

The Plant Shutdown Agreement refers back to the CBA: "Nothing in this Agreement shall be construed as waiving any Pension or Retirement benefits (including retiree medical) the affected employee may have under the terms of the Collective Bargaining Agreement." (Paragraph 21) This language, as defendant asserts, states an intention not to modify any retiree benefits that *may* exist under the CBA.

Plaintiffs rely on that portion of Paragraph 4(i) of the Shutdown Agreement which states: "Employees who retire during the 12-month period, or prior to that period, will receive the retiree health care benefits provided for in the collective bargaining agreement." Plaintiffs assert that this clause is ambiguous, and that the Court should look to other provisions of the Shutdown Agreement to determine the parties' intent.

Plaintiffs assert that a finding against vesting would render the promise of retiree benefits nugatory and illusory in violation of *Yard-Man.* Plaintiffs reason that Paragraph 4(i) promises the retiree health care benefits provided in the 1997 CBA to employees who became eligible for retirement prior to the plant shutdown or up to one year after the plant closed, which would also be up to one year after the expiration of the 1997 CBA in June 2002. Plaintiffs contend that if the Court found that TRW's obligation to provide benefits ended with the expiration of the 1997 CBA and did not vest under the Shutdown Agreement, the

9

latter would have promised retirees nothing.  That is, retirees would have only been eligible for benefits up until June 30, 2002 (the expiration of the CBA), prior to the date of many employees' retirement. The promise would be nugatory and illusory for many individuals who retired at the time or up to a year after the plant closing. Further, for those who had retired prior to June 30, 2002, an interpretation against vesting provides for no more benefits than the benefits retirees were already entitled to under the 1997 CBA. Plaintiffs posit that if it had been the intent of the parties for retiree benefits to terminate at the expiration of the 1997 CBA, there was no need to have put any reference to retiree benefits in the Shutdown Agreement, as the general clause stating that the terms of the 1997 CBA remained in effect until June 30, 2002 would still have been controlling. Instead, plaintiffs assert, the parties agreed in Paragraph 4 of the Shutdown Agreement to provide "additional compensation and benefits" to affected employees and they agreed in Paragraph 21 of the Shutdown Agreement that affected employees were not waiving any right to pension or retirement benefits. Plaintiffs conclude that it is reasonable to infer that the benefits provided for in the Shutdown Agreement are in addition to those (1) already promised in the 1997 CBA and/or (2) benefits that were never promised to be provided, but as a result of the plant closing would be provided. If not for the Shutdown Agreement, retiree benefits would have terminated on June 30, 2002 at the expiration of the CBA, the exact time affected employees became retirees and eligible for such benefits.

     Plaintiffs' argument is unavailing. Plaintiffs agree that Paragraph 4(i)'s language "the retiree health care benefits provided for in the collective bargaining agreement" incorporates the CBA's retiree health clause.  This, then, indicates a reference back to the CBA, and not a

creation of new rights or obligations regarding retiree health care. Consequently, the Shutdown Agreement only incorporated the benefits provided for in the CBA, which were limited to the term of the CBA. Yet, plaintiffs contend that while the Shutdown Agreement incorporated that clause of the CBA, it did not incorporate the part of the clause which limited those rights to the term of the CBA because the promise would then be rendered illusory. Plaintiffs, in fact, assert that the Shutdown Agreement supplants the durational language in the CBA. Plaintiffs, however, cannot logically argue that the Shutdown Agreement incorporated one part of the CBA's retiree health benefits clause, but not another. Plaintiffs urge the Court to find that *Zielinski v. Pabst Brewing Co., Inc.,* 463 F.3d 615 (7th Cir. 2006), supports their argument.

*Zielinski* (a Seventh Circuit decision) is distinguishable because the court expressly noted in that case that the shutdown agreement "supplanted" the existing collective bargaining agreement, and the shutdown agreement provided that "the Company shall continue to provide the health and welfare benefits for retirees . . . described in ... the collective bargaining agreements..." The shutdown agreement did not have a termination date and the court did not indicate that the collective bargaining agreement contained a specific durational limitation on the retiree benefits. Thus, the "shall continue" language was found to ensure a vested right to health benefits for retirees.

In this case, on the other hand, the Plant Shutdown Agreement did not supplant the CBA. In fact, Paragraph 15 of the Shutdown Agreement states that all provisions of the CBA remained in effect so long as they were not "inconsistent with any provision [of] the Plant Shutdown Agreement." Because plaintiffs do not identify a provision in the Shutdown

Agreement that expressly promised "lifetime" or "continued" retiree benefits, the CBA's time limit on TRW's obligation to provide retiree health benefits was not inconsistent with the Shutdown Agreement and, thus, survived the Shutdown Agreement.  Additionally, unlike *Zielinski*, the Shutdown Agreement herein did not contain "shall continue" language. Finally, the retiree health benefits clause here, unlike in *Zielinski,* did have a specific durational clause.

Plaintiffs' contention that finding against vesting would render the promise of retiree benefits illusory is faulty because it relies on the erroneous argument that the Shutdown Agreement promised lifetime retiree health benefits. Rather, the Court must look to the paragraph immediately preceding that upon which plaintiffs rely in Paragraph 4(i), as defendant urges this Court to do:

> For purposes of eligibility for a normal or early retirement under the pension plan, an affected employee's severance from service date shall be deemed to be 12 months after the date of their layoff, or earlier if they die or retire prior to that date.
>
> Employees who retire during the 12-month period, or prior to that period, will receive the retiree health care benefits provided for in the collective bargaining agreement.

The Court agrees with defendant that read together, these two provisions show that the Shutdown Agreement's retiree health language was not intended to create a substantive right to retiree health insurance, but only allowed affected employees to be treated as retirees under the CBA if they were eligible to retire within 12 months after their layoff.  The language shows that the Shutdown Agreement guaranteed that employees who were able to retire within 12 months of their layoff would receive whatever benefits were provided to other retirees. The benefits were those contained in the CBA. Absent the Shutdown Agreement's promise that post-layoff retirees would be treated the same as pre-layoff retirees, the

12

Shutdown Agreement would have permitted a reduction, termination, or denial of benefits for post-layoff retirees regardless of the benefits provided to those who retired prior to being laid off. On this basis, plaintiffs' illusory argument fails.

Plaintiffs also assert that while the Shutdown Agreement contains no general termination clause, other sections of the Agreement do contain durational language, such as the temporary provision of job transition services provided for in Paragraph 8 and the following provisions contained in Paragraph 4:

> 4. The following additional compensation and benefits will be provided to affected employees, where applicable:
>
> \*\*\*
>
> b. Each affected employee will continue to receive medical benefits in accordance with the Employee Benefits Book for TRW full-time hourly employees for the Cleveland Valve Plant covered by the UAW Local 2400 which provides that if an employee is laid off, coverage will continue for three months following the month which the layoff is effective.  Thereafter, each affected employee shall be eligible for coverage, at the employees expense under the provisions of [COBRA] for a period of up to 18 months.
>
> \*\*\*
>
> d. Upon ratification of this Plant Shutdown Agreement, the Income Protection Plan (IPP) will be terminated.  The funds from the IPP Plan, and additional funds to be provided by TRW, will result in a $630 ratification bonus to be paid to each affected employee upon layoff.  Employees currently on layoff and eligible for the ratification bonus will be paid the bonus within two weeks of ratification.  Employees not currently on layoff will be paid the ratification bonus within two weeks after the date of their layoff.
>
> e. <u>Life Insurance</u>.  TRW agrees to pay for affected employees, their current election life insurance premium for a period of three months after the affected employee's termination date.

Plaintiffs reason that since there is no termination or durational limits on defendant's obligation to provide retiree health benefits at the levels stated in the 1997 CBA, there is a

13

strong inference that the parties intended to vest lifetime benefits.

Defendant asserts that plaintiffs' reliance on these clauses is misplaced because these termination benefits were either not required by the CBA or did not have a specific durational limitation in the CBA, while retiree health care was provided for in the CBA and it was limited there to the duration of the CBA. As such, defendant contends, because this limited right was incorporated by reference into the Shutdown Agreement, there was no need to explicitly repeat the limitation. This Court agrees. The CBA already provided that the retiree health benefits clause "shall not be construed to convey any rights to those beyond the term of this agreement."  The Plant Shutdown Agreement, therefore, did not have to again include a specific durational clause as to these benefits.

Additionally, plaintiffs argue that defendant's conduct in continuing to provide retirees with the exact level of benefits contained in the 1997 CBA until almost four years after defendant argues its obligation to do so ended is strong evidence that the parties intended for the benefits to vest.  As defendants point out, however, the CBA did not require it to terminate retiree health care at its expiration, but allowed them to take such action (which includes modification as occurred here).

Plaintiffs further point out that a shutdown agreement is final and binding, and once a right is created, there is no future opportunity to change that right as there is with a collective bargaining agreement which is renegotiated every several years.  Plaintiffs cite to *Diehl v. Twin Disc, Inc.,* 102 F.3d 301, f.n. 5 (7th Cir. 1996), wherein the court noted that

> Once the Union and the company had negotiated for lifetime benefits in a final
> Shutdown Agreement, it would be logical for the parties to assume that, since there
> would be no future negotiations, there would be no change of benefits- that is, unless
> [the company] retained a right to modify *unilaterally* the plan of coverage.

14

Plaintiffs then assert that when the parties herein negotiated the Shutdown Agreement, it is logical to assume that both parties knew there would be no future negotiations or change of benefits, as neither party retained the right to unilaterally modify any provisions contained in the Shutdown Agreement.

Essentially, plaintiffs are arguing that defendant was obligated to include specific durational language stating that retiree health benefits would expire with the CBA. However, the Sixth Circuit does not require such. See, e.g., *Moore v. Rohm & Haas,* 2008 WL 4449407 (N.D.Ohio Sept. 30, 2008) (citing *Yolton v. El Paso Tennessee Pipeline Co.,* 435 F.3d 571 (6th Cir. 2006) ("*Yard-Man* does not shift the burden of proof to the employer or require specific anti-vesting language in order for a court to find that the parties did not intend benefits to vest.") Additionally, in *Diehl,* unlike here, the shutdown agreement contained an unambiguous provision entitling retirees to vested welfare benefits.  *Diehl,* 102 F.3d at 306. Therefore, *Diehl* does not require a contrary result to the one reached here.

For these reasons, the Court finds that the CBA unambiguously disclaimed the right to lifetime retiree health benefits.

Following the briefing herein, plaintiffs filed a Notice of Filing of Supplemental Authority and attached the Sixth Circuit decision of *Cole v. ArvinMeritor, Inc.*, - F.3d -, 2008 WL 5211802 (6th Cir. December 16, 2008), which had been decided that day.  Plaintiffs, however, provide no discussion as to why that case supports a decision in their favor. Defendant did not respond to the supplemental authority.  For the following reasons, the case does not require a finding in plaintiffs' favor.

In *Cole,* the lawsuit was filed after the company changed and then announced its

15

decision to eliminate all retiree health care benefits. The court found that retired employees had been promised in the applicable CBA lifetime health benefits. The court recognized the well-established law that vesting of retiree health care benefit plans occurs only if the parties so intended when they executed the applicable labor agreements. The court determined that the following language contained in the Insurance Program (a document incorporated into the CBAs) evidenced an unambiguous promise of lifetime health benefits:

> The Health Care... Coverages an employee has under this Article at the time of retirement or termination of employment at age 65 or older ... **shall be continued thereafter** provided that suitable arrangements can be made with the Carrier(s). Contributions for coverages so continued shall be in accordance with Article I, Section 3(b)(6).

The company relied on Section 8 of the Insurance Agreement which they argued expressly limited retiree insurance coverage to the duration of the CBA:

> This [Insurance] Agreement and [Insurance] Program as modified and supplemented by the [Insurance] Agreement shall continue in effect until termination of the Collective Bargaining Agreement of which this is a part.

The court disagreed, finding that *Yolton, supra,* requires that a durational limitation must include a specific mention of retiree benefits in order to apply to such benefits. Otherwise, *Yolton* holds, general durational language says nothing about retiree benefits. General durational provisions only refer to the length of the CBA and not the period of time contemplated for retiree benefits. The court concluded that Section 8 "simply does not include such a specific mention [of retiree benefits.]"

In contrast to *Cole,* the statement, "This clause shall not be construed to convey any rights to those beyond the term of this agreement," is found in the "Retiree Medical Benefits" clause of the CBA. While plaintiffs do not argue that this language is ambiguous, they argue

16

that the Plant Shutdown Agreement supplanted the CBA. Yet, as discussed herein, the Shutdown Agreement could not have incorporated the retiree health clause without also incorporating the durational language included therein. Moreover, the Shutdown Agreement did not contain the "shall continue" language found in *Cole*. For these reasons, that case does not require a contrary result to the one reached herein.

### Conclusion

For the foregoing reasons, defendant's Motion to Dismiss Plaintiffs' Complaint for Failure to State a Claim is granted.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 1/26/09